NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA S., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 23-22441 (RK) <br><br> OPINION |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Angela S.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **VACATES** the Commissioner's decision and **REMANDS** this matter for further proceedings.

**I.    BACKGROUND**

    On May 5, 2021, Plaintiff filed an application for disability and disability insurance benefits alleging disability as of February 7, 2021. The Social Security Administration (the "Administration") denied Plaintiff's request both initially, (Administrative Record, "AR," at 159), and on reconsideration, (*id.* at 172). At Plaintiff's request, Administrative Law Judge Ricardy Damille (the "ALJ") held a telephonic hearing on June 17, 2022. (*Id.* at 42–67.) At the hearing,

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (*Id.*) On October 24, 2022, the ALJ issued a written decision finding that Plaintiff suffered from the following severe impairments: bilateral carpal tunnel syndrome; depression; bipolar disorder; anxiety; post-traumatic stress disorder ("PTSD"); attention deficit hyperactivity disorder ("ADHD"); and history of cocaine use disorder. (*Id.* at 24.) The ALJ found Plaintiff suffered from the following non-severe medically determinable impairments: nerve damage in her left leg and buttocks due to chemical burns; hypertension; sleep apnea; chronic obstructive pulmonary disease; status post-pacemaker implant; torn meniscus in the right knee; lumbar spine impairment; and obesity. (*Id.*) The ALJ stated he found these impairments were not severe "based on the medical record which does not indicate any complications or ongoing, limiting physical symptoms related to these conditions." (*Id.*)

The ALJ found Plaintiff not disabled because although Plaintiff was unable to perform any past relevant work, sufficient jobs existed in the national economy that she could perform given her residual functional capacity ("RFC"). (*Id.* at 34.) Specifically, the vocational expert at the hearing testified that Plaintiff could perform the occupations of: janitor cleaner; warehouse worker; and conveyor tender. (*Id.* at 27.)

Plaintiff appealed the ALJ's decision, and the Administration's Appeals Council denied her appeal, rendering the ALJ's decision final. (*Id.* at 1–8.) The Appeals Council also found additional medical evidence Plaintiff submitted with the request for review related to Plaintiff's meniscus tear and subsequent surgery did not show a "reasonable probability that it would change the outcome of the decision" and decided not to add the additional evidence as exhibits to the record. (*Id.* at 2.)

Plaintiff then appealed the ALJ's decision to the District Court for the District of New Jersey on November 17, 2023. (ECF No. 1.) In her brief filed on May 14, 2024, Plaintiff argued

that the ALJ did not properly consider the medical opinion of Dr. Pavel Tishuk, an independent medical examiner and specialist in neurology who examined Plaintiff related to chemical burns on her legs and buttocks incurred by Plaintiff while in custody as a prisoner. ("Pl. Br.," ECF No. 10 at 10–12, 16–22; *see also* AR at 656.) Plaintiff argues this impacted the ALJ's findings regarding the severity analysis of the effects of the chemical burns, as well as the ALJ's RFC analysis. (Pl. Br. at 16–22.) Second, Plaintiff argued that the ALJ's RFC finding was based on the ALJ's own non-medical, or "lay" opinion rather than on medical evidence in the record, and was not supported by substantial evidence. (Pl. Br. at 22–27.)[2] Third, Plaintiff argues new material evidence submitted to the Appeals Council merits remand because it shows the ALJ erred in finding Plaintiff's knee impairment related to her meniscus tear was non-severe and that it did meet the durational requirement for severity. (Pl. Br. at 27–30.) Plaintiff seeks the Court to reverse the ALJ's decision and either award Plaintiff benefits or alternatively remand for further proceedings. (*Id.* at 31.)

On July 15, 2024, the Commissioner filed an opposition to Plaintiff's appeal on the basis that overall the ALJ's disability determination was based on substantial evidence. ("Opp.," ECF No. 14 at 23.) Specifically, the Commissioner argued that (1) the ALJ treated Dr. Tishuk's evidence appropriately because it did not qualify in the category of a "medical opinion" under the relevant guidelines; (2) the ALJ properly based his RFC analysis on medical opinions and other categories of relevant evidence in the record; and (3) the evidence Plaintiff submitted to the Appeals Council was late for no good cause, and was neither new nor material. On August 12, 2024 Plaintiff filed a reply, arguing that the Commissioner's brief effectively admits that the ALJ did not properly

---

[2] While an ALJ is "ultimately 'responsible for making an [RFC] determination based on the medical evidence,' . . . he may not inject his 'lay speculation' on the meaning of medical evidence." *Pearly v. Comm'r of Soc. Sec.*, No. 20-1738, 2021 WL 3206825, at *3 (D.N.J. July 29, 2021) (internal citations omitted).

consider Dr. Tishuk's opinion under the regulations. ("Reply," ECF No. 17 at 1.) Plaintiff further reiterated her arguments that the RFC finding was based on the ALJ's own, non-medical opinion after the ALJ found almost all of the medical opinions in the record unpersuasive and was not supported by medical evidence, and finally that the medical evidence related to Plaintiff's knee impairment submitted to the Appeals Council was not available until after the ALJ issued his decision and was material to the ALJ's RFC finding that Plaintiff was capable of a full range of work at all exertional levels. (Reply at 5–13.)

## II.     LEGAL STANDARD

### A.     STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales,* 402 U.S.

389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999)).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy."

*McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.,* 931 F.3d 198, 201 (3d Cir. 2019).

### III. DISCUSSION

Plaintiff appeals the Appeals Council's affirmance of the ALJ's decision. She primarily argues that the ALJ erred in two respects at Step Four of the disability determination process—specifically, the ALJ's evaluation of Dr. Tishuk's medical opinion evidence and the ALJ's subsequent determination of Plaintiff's RFC. (Pl. Br. at 16–27.) Plaintiff additionally argues the

5

case merits remand as new and material evidence submitted to the Appeals Council shows the ALJ erred in finding Plaintiff's knee impairment was not severe based on the 12-month durational requirement, which would further affect the ALJ's RFC analysis. (*Id.* at 27–30.)

Because the Court finds that the ALJ's analysis of the medical evidence was not sufficient under the regulations, the Court does not reach Plaintiff's remaining challenges to the ALJ's decision. *See, e.g., Ingandela v. Kijakazi*, No. 20-08033, 2022 WL 154422, at *9 (D.N.J. Jan. 18, 2022) (declining to address all of Plaintiff's arguments where one required remand). Plaintiff argues the ALJ did not properly consider Dr. Tishuk's medical opinion evidence and that the Commissioner's brief effectively admits this by attempting to reframe Dr. Tishuk's opinion as something other than a medical opinion, rather than defending how the ALJ considered it. (Pl. Br. at 16–22; *see also* Reply at 1–5.) The Court agrees and remands on this basis for the ALJ to provide additional explanation for how he considered Dr. Tishuk's opinion.

A.     CATEGORIES OF EVIDENCE FROM MEDICAL SOURCES

Medical opinion evidence is a type of evidence submitted in relation to a claimant's disability benefits claim as submitted to the Administration. 20 C.F.R. § 404.1513(a)(2). Under the Commissioner's regulations, all evidence received is "evaluate[d] . . . according to the rules pertaining to the relevant category of evidence." *Id.* at § 404.1513(a). Medical opinion evidence must be evaluated under the factors articulated in 20 C.F.R. § 404.1520c, which the Court will discuss in detail below. *Id.* However, evaluations submitted into evidence by a physician or other licensed healthcare worker (i.e., by a "medical source") are not necessarily "medical opinions" unless they meet certain requirements.[3] In cases where the evidence submitted by a medical source

---

[3] A "medical source" is defined as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d).

does not qualify as a medical opinion, the ALJ is not required to apply the specific evaluation framework for medical opinions articulated in 20 C.F.R. § 404.1520c or to specifically weigh the non-medical opinion evidence's persuasiveness, or "weight." *Id.*

For claims filed after March 27, 2017, a "medical opinion" is defined as:

> "[A] statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in the following abilities: . . .
> (i) [Their] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) [Their] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) [Their] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) [Their] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

There are two additional categories of evidence from medical sources that do not qualify as medical opinion evidence. First, objective medical evidence, defined as "signs, laboratory findings, or both." *Id.* at § 404.1502(f); *see also id.* § 404.1513(a)(1).[4] Second, there is a category defined as "[o]ther medical evidence." *Id.* § 404.1513(a)(3). For claims filed after March 27, 2017, other medical evidence is "evidence from a medical source that is not objective medical evidence

---

[4] "Signs" are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1502(g).

7

or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.*

Additionally, the guidelines outline a category of evidence called "evidence that is inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). This includes "statements on issues reserved to the Commissioner" which would "direct [] determination or decision that [a claimant is] or [is] not disabled . . .within the meaning of the Act." *Id.* This is because the Commissioner alone is "responsible for making the determination or decision about whether" a claimant is disabled. *Id.* This includes statements that: a claimant is or is not disabled, able to work, or able to perform regular or continuing work; statements about whether a claimant has a severe impairment; or statements about whether or not an impairment meets the duration requirement for a severe impairment. *Id.* This category can include individual statements from medical sources in medical opinions, in testimony, or in other medical evidence. *Id.* Because evidence in this category is "neither valuable nor persuasive to the issue of whether [a claimant is] disabled . . . under the Act" the Commissioner does not "provide any analysis about how [he] considered such evidence in [his] determination or decision" even if such statements are found within medical opinion evidence analyzed under 20 C.F.R. § 404.1520c. *Id.*

### B. THE COMMISSIONER'S FRAMEWORK FOR MEDICAL OPINION EVIDENCE

Under 20 C.F.R. § 404.1520c(b)(2), an ALJ is required to consider medical opinion evidence and determine the persuasiveness, or "weight," of the opinions by considering specific factors listed in the Regulations. These factors include: (1) the "supportability" of the opinion based on objective medical evidence and supporting explanations presented by the medical source; (2) the "consistency" of the opinion with the record as a whole including other medical evidence and nonmedical sources; (3) the physician's "relationship with the claimant" including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) the "specialization" of the physician and how the medical opinion relates to the medical source's area of specialty; and (5) "other relevant factors" that tend to support or contradict the medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the disability program's "policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c); *see, e.g.*, *Beerhalter v. Comm'r of Soc. Sec.*, No. 19-17561, 2020 WL 5627015, at *6 (D.N.J. Aug. 18, 2020) ("[T]he ALJ will consider a medical opinion using certain factors, including whether the opinion is supported by objective medical evidence and explanations, and whether the opinion is consistent with the evidence from other medical sources and nonmedical sources." (quoting *Jackson v. Saul*, No. 18-4374, 2019 WL 4058997, at *5 (E.D. Pa. Aug. 27, 2019))). A medical opinion is "more persuasive" where the objective medical evidence and supporting explanation from the medical source is "more relevant." *Id.* § 404.1520c(c)(1). Similarly, a medical opinion is more persuasive where it is "more consistent" with evidence from other medical sources and other nonmedical sources. *Id.* § 404.1520c(c)(2).

Under current regulations, "a treating source's opinion will be given controlling weight only if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Candace D. v. Kijakazi*, No. 23-01151, 2024 WL 913218, at *7 (D.N.J. Mar. 4, 2024) (quoting *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 366–67 (3d Cir. 1984)). However, "[a] treating source's conclusory medical opinions . . . will not be given controlling weight." *Id.*; *see also Chandler*, 667 F.3d at 361 ("[T]he law is clear . . . the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.").

However, "while the ALJ is not required to assign a particular weight to an opinion, he must still consider" the factors outlined above as required by the regulations. *Beerhalter*, 2020 WL 5627015, at *6; *see also Susan C. v. O'Malley*, No. 23-00272, 2024 WL 1328190, at *10 (D.N.J. Mar. 28, 2024) (affirming where the ALJ based the weight given to each medical opinion on its consistency with the medical record evidence and otherwise "articulat[ed] his findings in a manner consistent with the regulations").

In *Beerhalter*, the ALJ wrote in his Opinion that he found a specific doctor's medical opinion was not persuasive because the medical opinion was written several years before the claimant's current disability application. 2020 WL 5627015, at *7. The ALJ did not use the factors required by 20 C.F.R. § 404.1520c and did not address the substance of the medical opinion when finding it unpersuasive. *Id.* The district court remanded the matter to the ALJ because "although the ALJ was not explicitly required to assign any particular weight to [the medical] opinion, it was improper to reject the opinion . . . without considering the factors contained in 20 C.F.R. § 404.1520c." *Id.* at *7 (citing *Heise v. Astrue*, No. 09-5455, 2010 WL 3086445, at *9 (D.N.J. Aug. 2, 2010)). Further, the district court found the ALJ's "single, conclusory sentence" determining

the medical opinion was not persuasive did not constitute an "adequate explanation" for the ALJ's assignment of persuasiveness, or weight, to the medical opinion. *Id.* (citing *Bowers v. Saul*, No. 19-17386, 2020 WL 4435405, at *8 (D.N.J. Aug. 3, 2020)).

### C.    THE MEDICAL EVIDENCE OF PAVEL TISHUK, M.D.

Like in *Beerhalter*, the critical deficiency is that the ALJ did not properly apply the required factors, and did not provide the required "adequate explanation" for finding the medical opinion was not persuasive.

On August 20, 2021 Plaintiff underwent an independent medical examination from neurologist Pavel Tishuk, MD. (Pl. Br. at 10-11; AR at 1340–1345).[5] As of the date of the examination, Dr. Tishuk was dual board certified in neurology and in neuromuscular medicine by the American Board of Psychiatry and Neurology. (AR at 1345.) Dr. Tishuk compiled his findings regarding Plaintiff in a comprehensive six-page report that he sent to Plaintiff's counsel on August 25, 2021. (*Id.* at 1340.) Dr. Tishuk's examination focused on Plaintiff's stated symptoms, laboratory diagnostics, and physical signs related to a serious chemical burn she sustained on her lower body while employed in prison. (*Id.* at 1340.)

According to the history taken by Dr. Tishuk during the examination, on July 15, 2019 while working in prison, Plaintiff wiped degreaser on a surface and subsequently sat on the degreaser, sustaining chemical burns to her buttocks, upper posterior thighs, and lower left leg. (*Id.*) Plaintiff was treated for chemical burns at the time at the Edna Mahan Correctional Facility

---

[5] The Commissioner characterizes Dr. Tishuk's medical examination as an "independent medical examination for litigation in connection with Plaintiff's work-related injury that occurred in prison in July 2019." (Opp. at 6.) Plaintiff does not address the subject of this lawsuit, and characterizes Dr. Tishuk as the "Commissioner's own consultative examiner." (Reply at 7.) While Dr. Tishuk's exact status is not clear based on the record in front of the Court, it is also not necessary for determination of this appeal. However, if there is any further briefing of this issue in front of the Court, it would expect clarification of Dr. Tishuk's relationship to all parties.

for Women. (*Id.*) Plaintiff also received an MRI of her lower spine at the Jersey Shore University Medical Center on October 27, 2020. (*Id.*) She was then referred for pain management. (*Id.*)

Dr. Tishuk memorialized the history of Plaintiff's injury, her current complaints and symptoms, and then conducted a physical examination. (*Id.*) In the course of the physical examination, Dr. Tishuk documented the presence and size of burn scarification and both hypopigmentation and hyperpigmentation on Plaintiff's left buttock; the presence and size of scarification and hypo-hyperpigmentation on Plaintiff's left thigh; hypo/hyperchromic scarification over the right buttock and right thigh; areas of lost pinprick sensation; and evaluation of Plaintiff's deep tendon reflexes and motor function of the lower extremities. (*Id.* at 1340–1341.) Dr. Tishuk's opinion noted he reviewed the 2019 treating records from the Edna Mahan Correctional Facility for Women and the 2020 MRI from Jersey Shore University Medical Center, Department of Diagnostic Imaging. (*Id.* at 1342.) Dr. Tishuk found the MRI showed lumbar spondylosis with spinal canal stenosis seen at L4-L5 and L2-L3 related to diffuse disc bulges and facet arthropathy, and superimposed posterocentral disc herniation at L4-L5. (*Id.*)

Dr. Tishuk then concluded that Plaintiff had "[l]ateral buttock and posterior thigh scarification secondary to chemical burns with daily severe neuropathic pain requiring opioid analgesic." (*Id.*) He further concluded that Plaintiff had "[p]ost-traumatic chronic left sciatica pain secondary to deep left buttock chemical burn." (*Id.*) Dr. Tishuk also opined that Plaintiff's current issues stemmed from her 2019 chemical burns, and not an earlier chemical burn from 2015 which appeared to have healed without creating significant residual symptoms. (*Id.* at 1343.)

Dr. Tishuk then reiterated a discussion with Plaintiff regarding the effect her injuries had on her activities of daily living. (*Id.*) He opined that "it is medically probable that the residual limitations the patient has identified will have a substantial impact on the patient's future ability

12

to participate in the activities of daily living that she has identified without pain and discomfort." (*Id.*) In conclusion, Dr. Tishuk found "[t]he burn scars are associated with permanent damage of the skin, as well as sensory nerves in the area of the burns." "[T]he burn on the left buttock was deep," such that, in his "opinion, [the burn] caused adhesions after [it] healed, which triggered chronic sciatic nerve irritation associated with neuropathic pain." (*Id.* at 1344.) Dr Tishuk concluded that the neuropathic pain was permanent. (*Id.*) Dr. Tishuk stated "[t]his woman will require the permanent use of analgesics, including daily use of opioids and also will limit her employability significantly as well as quality of life." (*Id.*) Further, he opined that in the future "due to chronic sciatica pain, [Plaintiff] may face interventional treatment of which may include but not limited to epidural injection, radiofrequency ablation and/or spinal stimulator placement." (*Id.*) Dr. Tishuk concluded that "[a]ll opinions regarding this patient's injuries . . . are made to a reasonable degree of medical probability" based on his experience. (*Id.* at 1345.)

### D. THE ALJ'S ANALYSIS OF DR. TISHUK'S MEDICAL OPINION

Notwithstanding the Commissioner's post-hoc attempt to minimize Dr. Tishuk's expertise by recharacterizing Dr. Tishuk's comprehensive evaluation as non-medical opinion evidence, the ALJ in this case has not sufficiently articulated his reasoning in keeping with the requirements of 20 C.F.R. § 404.1520c. In examining the persuasiveness of Dr. Tishuk's opinion, the ALJ wrote:

> On August 20, 2021, Dr. Tishuk opined that the claimant's reported limitations in exertional and postural maneuvers will have a substantial impact on her future ability to participate in activities of daily living without pain and discomfort. She will require permanent use of analgesics including daily use of opioids and also will limit her employability significantly as well as quality of life (Exhibit 10F at 4 and 5). I find this opinion is not persuasive as a specific assessment of limitations was not provided.

(AR at 32.) The ALJ did not issue any findings regarding the supportability or consistency of the medical opinion, or consider the doctor's specialization and how that may have affected his

13

medical opinion. Further, the ALJ did not address Dr. Tishuk's substantive findings or identify any contrary evidence that might have affected the weight he accorded Dr. Tishuk's opinion. *See, e.g., Susan C.*, 2024 WL 1328190, at *4 (affirming where the ALJ found a medical opinion less persuasive because of contradictory findings with other medical assessments in the record).

The Commissioner's opposition brief does not disagree with the regulatory requirements that Plaintiff cites or that the ALJ failed to address supportability and consistency of Dr. Tishuk's opinion. (*See generally* Opp.) Instead, the Commissioner argues that the "articulation requirements" Plaintiff complains of only apply to "medical opinions," which have a limited definition that excludes Dr. Tishuk's "report." (Opp. at 11–12.) Specifically, the Commissioner argues that all of the medical evidence submitted by Dr. Tishuk falls into the category of non-medical opinion evidence and that aside from the limited objective medical evidence findings in Dr. Tishuk's report, the doctor "merely memorialized Plaintiff's own statements about her limitations" or "involved an issue reserved to the Commissioner." (*Id.* at 12-13.) The Court understands Defendant's argument to characterize all of Dr. Tishuk's statements as either "other medical evidence" or "evidence that is inherently neither valuable nor persuasive." See 20 C.F.R. §§ 404.1513(a)(3); 404.1520b(c).

As such, the Commissioner argues the ALJ was not required to address the supportability or consistency of Dr. Tishuk's evidence as submitted to the ALJ because it did not meet the requirements of a medical opinion and those other categories of medical source evidence do not require application of the same framework or application of those factors. (*Id.* at 13.) Further, the Commissioner argues because Dr. Tishuk's "conclusory" statements fall under the category of evidence that is neither persuasive nor valuable, as outlined earlier in this opinion, the ALJ was not "required to articulate" his consideration of that evidence at all and the ALJ's analysis was

therefore sufficient. (*Id.*) Plaintiff's reply argues that this entirely reframes and redrafts the ALJ's decision, which explicitly treated Dr. Tishuk's evidence as a medical opinion rather than non-medical opinion evidence. (Reply at 1–5.) Plaintiff is correct.

On its face, the ALJ's decision treats Dr. Tishuk's evidence as a medical opinion throughout. (*See generally* AR at 23–34.) The ALJ uses the word "opined" to refer to Dr. Tishuk's evaluation and included an evaluation of the persuasiveness of the "opinion." (*Id.* at 32.) Non-medical opinion evidence would not include a persuasiveness analysis, as that is reserved for medical opinions. 20 C.F.R. § 404.1520c. Further, elsewhere in his decision, the ALJ identifies other, non-opinion evidence regarding Plaintiff's condition that originated from a medical source and explicitly differentiates it from the medical opinion evidence given by Dr. Tishuk, declining to weigh the persuasiveness of the non-medical opinion evidence. (AR at 32; *see also* Reply at 2.).

When evaluating medical evidence submitted by Dr. Deepinder Arora, M.D., the State's consultative medical examiner, the ALJ found Dr. Arora had not provided a medical opinion. (*Id.*) Upon review of Dr. Arora's evidence, the ALJ wrote, "I have considered the findings of internal medicine consultative examiner Dr. Arora . . . However, the doctor failed to offer an opinion regarding [Plaintiff's] vocational abilities." (*Id.*) Notably, the ALJ treated the medical evidence from Dr. Arora in significant contrast to how he treated the medical opinion provided by Dr. Tishuk. (*Id.*) Further, in keeping with the finding that Dr. Arora had not submitted medical opinion evidence, the ALJ did not evaluate Dr. Arora's evidence for persuasiveness. (*Id.*) As such, it is clear the ALJ intended to treat Dr. Tishuk's and Dr. Arora's evidence differently.

The Commissioner's brief cannot supplant the plain language of the ALJ's decision or the ALJ's clearly articulated intent. *See Garcia-Sierra v. Kijakazi*, No. 21-458, 2023 WL 125082, at *7 (E.D. Pa. Jan. 5, 2023) ("It is the ALJ who is the finder of fact, not the excellent appellate

15

attorneys who represent the Commissioner before this court. Their after-the-fact explanation of why the record supports the ALJ's conclusion does not satisfactorily substitute for the ALJ's own analysis."); *see also Elizabeth N. v. Comm'r of Soc. Sec. Admin.*, No. 21-20778, 2022 WL 10650250, at *6 (D.N.J. Oct. 18, 2022) ("[T]he Court cannot accept the Commissioner's after-the-fact justification that did not appear in the ALJ's decision."). As such, the Court is not persuaded by the Commissioner's post-hoc argument that Dr. Tishuk only submitted a "report" rather than a "medical opinion." Because the ALJ treated Dr. Tishuk's evidence as a medical opinion, the ALJ was required to apply the factors required by the guidelines to his analysis of that evidence. Given Dr. Tishuk's status as an independent medical examiner with a specialty in neurology and neuromuscular medicine, the ALJ should have focused particularly on evaluating the medical opinion's supportability, consistency, and the impact of Dr. Tishuk's area of specialization on his findings.

The Commissioner further argues the evidence submitted by Dr. Tishuk only "memorialized Plaintiff's subjective complaints and offered conclusory statements, including on an issue reserved to the Commissioner" and that "the ALJ's consideration of it was more than adequate." (Opp. at 13.) The Court does not agree. The substance of Dr. Tishuk's medical opinion reviewed Plaintiff's history and the history of particular chemical burns causing issues; assessed medical diagnostics of the site of the burn and related areas, including an MRI of Plaintiff's lumbar spine; conducted an in-person medical examination; and wrote a prognosis that included the doctor's assessment of the likelihood of the damage's permanency and his opinion regarding the Plaintiff's prognosis. ("Ex. 10F,"AR at 1340–45.) While Dr. Tishuk acknowledged his analysis relied at least in part on Plaintiff's rendition of her symptoms, it also relied on objective medical testing, his own observations during the physical examination, and his education and experience.

He concluded that "[a]ll opinions regarding this patient's injuries . . . are made to a reasonable degree of medical probability based on [his] experience." (*Id.* at 1345.) Given that Dr. Tishuk is dual board certified in neurology and neuromuscular medicine, the Court requests the ALJ to undertake a more thorough and substantive analysis based on Dr. Tishuk's experience and findings.

While the Commissioner might not agree with Dr. Tishuk's medical opinion, he has not sufficiently shown that the ALJ properly considered the required factors when assessing the weight to accord it. *See Bowers v. Saul,* No. 19-17386, 2020 WL 4435405, at *8 (D.N.J. Aug. 3, 2020) (remanding where the ALJ did not adequately explain the weight placed on a physician's opinion); *see also Morales*, 225 F.3d at 317 ("[A] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."); *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("[A]lthough [the ALJ] 'may properly accept some parts of the medical evidence and reject other parts,' [the ALJ] must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'" (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994))). As such, the Court will remand the decision to the ALJ "for further consideration of the weight to be accorded to the opinion" of Dr. Tishuk and "a determination of Plaintiff's residual functional capacity based on the appropriately weighted medical evidence." *Bowers*, 2020 WL 4435405, at *9.

On remand, the ALJ is directed to consider the newly-available evidence regarding Plaintiff's knee surgery and to reassess Dr. Tishuk's opinion and Plaintiff's RFC; specifically, the ALJ should clearly explain the weight afforded to Dr. Tishuk's opinion in its RFC analysis.

## CONCLUSION

Having reviewed the record as a whole, the Court **VACATES** the Commissioner's decision and **REMANDS** this matter for further consideration consistent with this Opinion. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 23, 2024